FELLOWS *et al. v.* HYMAN *et al.*

LOOKER *v.* SAME.

(*Circuit Court, D. Colorado.* January 2, 1888.)

LACHES—WHAT CONSTITUTES—DELAY IN BRINGING SUIT.

In an action to avoid a conveyance of mining lands, alleged to have been procured by fraud, from plaintiff's ancestor, it was shown that the ancestor died soon after, without knowledge of the fraud, and for 18 months prior to the suit plaintiffs lived in California, and knew nothing of the land, or what was going on in this state; but immediately on getting information of the fraud, proceeded to investigate it, and brought suit in a few days—a little less than three years from the date of the conveyance. *Held,* on demurrer, that this was not such laches as ought to deprive plaintiffs of the right to sue.

In Equity. On demurrer.

Bill filed by plaintiffs, Julia Fellows and others, against defendants, Daniel M. Hyman and Charles Burns, to set aside a deed conveying an interest in mining lands, made by the father of plaintiffs, since deceased. Defendants' demurrer overruled.

*L. C. Rockwell,* for complainants.

*C. J. Hughes, Jr.,* for defendants.

BREWER, J. In the case of Julia Fellows against Daniel M. Hyman the demurrer was argued yesterday, in which the only question discussed was the one reserved by Judge HALLETT for consideration before me, that of laches. Complainants have filed an amendment to their complaint, in which they state more at length the circumstances which delayed the bringing of this suit.

The defense of laches is one peculiar to a court of equity, and is enforced wherever, from the delay of the complainant in the bringing the suit, it would be inequitable to enforce the specific right. There is no fixed period of time which courts require as constituting laches. Each case stands on its own peculiar circumstances, and yet there are two kinds of cases between which there is a marked distinction. One is where the complainant was under a contract or other obligation to do something at a particular time, and omitted to do it at that time; as, for instance, where there is a contract to convey real estate, in which complainant has failed to make payment at the very time specified in the contract; there the complainant is at fault, and courts oftentimes will refuse specific performance, even though the delay has been short, if by reason of any changed condition in the relation of the parties, or the value of the property, it would be inequitable to enforce specific performance. The other case is where the defendant is at fault; where he is guilty of some fraud or other wrongful conduct by which he has obtained a title which, but for his fraud or misconduct, he would not have obtained. In cases like that, courts do not enforce the rule of laches with any great strictness, and certainly do not enforce it if the complainant commences his suit

within a reasonable time after the knowledge of the fraud or misconduct.

Now, this case is in the latter class. The bill charges that the defendant, by fraudulent representations, obtained, in January, 1884, the title to an interest in certain mining property. This suit was not brought until nearly three years thereafter; but complainants show that within a few weeks after the making of the deed which was made by their ancestor, he died, ignorant of the fraud which had been perpetrated, and that, for 18 months prior to the commencement of this suit, they have resided in California, most of the time in the rural districts of that state; that they have had little communication with Colorado, have not seen the papers of this state, and were ignorant of what was transpiring with reference to that property, and that they remained in ignorance until about the twenty-fifth day of November, 1886, when information was received by letter from some friend here, which induced one of these complainants to come and make investigation; and immediately on making investigations, and within 12 days after reaching Denver, this suit was brought. So that it is a case in which the defendant, by fraudulent representations, by his own misconduct, obtained title to this property, and the complainants, within a very few days after ascertaining the fact of that fraud, and of these fraudulent representations, and of defendant's misconduct, instituted this suit. If it were an action at law, the familiar rule is that the statute of limitations does not commence to run until the discovery of the fraud; and in equity, it certainly will not do to apply a harsher rule, and say that laches will be imputable when the party commences his suit immediately after the discovery of the fraud. Not only do complainants aver absolute ignorance of the fraudulent representations, but they show a state of affairs which renders their continued ignorance wholly reasonable, and such as might be expected. They were absent from the state while that litigation, which has become notorious here, was pending; and, by their residence, and their lack of communications with Colorado, they were so situated that it could not well be otherwise than that they should remain in ignorance of what was going on.

Now, under circumstances like that, the fact that since the sale of the property, through, perhaps, the active efforts of the defendant, has become enormously valuable, is not such a change in the situation of affairs as relieves defendant from responsibility for his misconduct or for his liability to place the parties back in the situation in which they would have been but for his misconduct. The bill sets out at length two lawsuits which have been pending in regard to this property,—one a controversy affecting the title to part of it, a controversy depending upon the validity of the location made by the ancestor of these complainants, in conjunction with others; a litigation pending years before the sale was made and which is still unfinished. Now, the existence of that litigation was a matter which was known to the parties at the time of the sale. The fraudulent representations charged had no relation to the facts involved in that litigation; its existence, in no manner, would tend to create a suspicion of unfairness. There was nothing in it which would disclose or suggest any misconduct on the part of the defendant, or throw

upon complainants, or their ancestor, the duty of investigating to see whether there was misconduct on defendant's part. The other litigation —that which affects the value of the property, in which, as averred, there has been large expenditures by defendant—was a litigation which arose after complainants had left the state, and has been carried on during their absence, and of which they were ignorant. Now, while it may be true that all this litigation, this enormous expenditure of money, this large development of the property, has made it very valuable, yet all that has happened without the slightest imputation of neglect, omission, or fault on the part of the complainants; and surely that changed situation, brought about by defendant, in no way relieves him from the consequences of his own wrong-doing years before this change has taken place.

It seems to me, upon the facts as stated in the bill, it cannot be held that complainants have been guilty of any laches in bringing this suit, and I shall therefore have to differ with my Brother HALLETT in his conclusions on the bill; conclusions reached, however, it must be noticed, when he did not have the full detail of facts, as stated in the amended complaint, before him. I shall therefore overrule the demurrer to the bill. Defendants have 30 days to answer.

The case of *Looker* v. *Hyman et al.* is kindred in its nature, and the same order will be entered. The demurrer will be overruled, and leave to answer in 30 days.